CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
Craig W. Straub (SBN 249032)
Zachary M. Crosner (SBN 272295)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mike@crosnerlegal.com
craig@crosnerlegal.com
zach@crosnerlegal.com
*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA ADRA and WAYNE MITCHELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PILLOW CUBE, INC. and JAY DAVIS,<br><br>Defendants. | Case No.: **'24 CV 2313 JO    BJC**<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiffs Sara Adra and Wayne Mitchell ("Plaintiffs") bring this action against Pillow Cube, Inc. ("Pillow Cube") and Jay Davis, CEO of Pillow Cube ("Davis") (collectively "Defendants"), individually and on behalf of all others similarly situated, and allege upon personal knowledge as to Plaintiffs' acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys as follows:

## NATURE OF THE ACTION

1.    Discounts of products benefit both sellers and their customers—when they are legitimate discounts. However, "fake sales" are deceptive and illegal.

2.    This is a consumer protection action that seeks to remedy Defendants' unlawful and deceptive business practices with respect to misleading sale promotions advertised on Pillow Cube's website as limited time discounted offers that, in reality, never end.

3.    To the detriment of consumers, as explained by the Ninth Circuit, sellers like Defendants are "well aware of consumers' susceptibility to a bargain, [and] therefore have an incentive to lie to their customers." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

4.    Advertised "sale" prices are important to consumers as they are more likely to purchase an item if they know they are getting a good deal. Moreover, if consumers think a sale will end soon, they are more likely to buy now, rather than wait, comparison shop, and/or buy a different product.

5.    False reference pricing occurs when a seller fabricates a false "original" price for a product and then offers that product at a substantially lower price under the guise of a sale. The resulting artificial price disparity misleads consumers into believing the product they are buying has a higher market value, and it induces them into purchasing the product. This practice artificially inflates the true market price for these products by raising consumers' internal reference price and in turn the value

consumers ascribe to these products (i.e., demand). Consequently, false reference pricing schemes enable retailers, like Pillow Cube, to sell products above their true market price and value—and consumers are left to pay the price.

6.    Consumers that are presented with discounts are substantially more likely to make the purchase. For example, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[1]

7.    Here, Defendants sell Pillow Cube pillows (the "Products") on the Pillow Cube website and at other online retailers at a supposed discount, when in fact no discount exists at all. This is a false reference pricing scheme that violates California and federal law.

8.    As the Federal Trade Commission advises in its *Guides Against Deceptive Pricing*, it is deceptive to make up an "artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" of that price. 16 C.F.R § 233.1. As a result, false sales violate California's general prohibition on unfair and deceptive business practices. See Cal. Bus. Prof. Code § 17200.

9.    Additionally, California law provides that "No price shall be advertised as a former price unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

---

[1] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com). https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html#:~:text=SocialBoost-,RetailMeNot%20Survey%3A%20Deals%20and%20Promotional%20Offers%20Drive%20Incremental%20Purchases%20Online,finding%20a%20coupon%20or%20discount.

10.    Through their false and misleading pricing scheme, marketing, and advertising, Defendants violated, and continue to violate, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq* and California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.

11.    Plaintiffs bring this action individually and on behalf of other similarly situated consumers who have purchased one or more products online that were deceptively represented as discounted from a false reference price. Plaintiffs seek to halt the dissemination of this deceptive pricing scheme and to obtain redress for those who have purchased products as a result of its sales offered at a false discount.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs. In 2022 alone, Defendants earned approximately $4,000,000 a year in revenue from sales of Pillow Cube Products.[2]

13.    This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of California, contract to supply goods within the State of California, and supply goods within the State of California. Defendants, on their own and through their agents, are responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this judicial district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendants. Thus, Defendants have intentionally availed themselves of the markets within California through their advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendants as it has

---

[2] https://www.oco.co/successes/pillowcube

purposefully directed activities towards the forum state, Plaintiffs' claims arise out of those activities, and it is reasonable for Defendants to defend this lawsuit because they have sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendants have intentionally and expressly aimed conduct at California which caused harm to Plaintiffs and the Class that Defendants know is likely to be suffered by Californians.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as Plaintiff Sara Adra purchased a Pillow Cube Product within this judicial district.

## **PARTIES**

15.    Plaintiff Sara Adra is an individual consumer who, at all times relevant to this action, was a citizen of and resided in San Diego County, California. Before purchasing Defendants' Product, Plaintiff saw Defendant's representations relating to the purported sale price for the Product. Had Plaintiff known the truth—that the Product was not marked down from the price it supposedly was, Plaintiff would not have purchased the Product. On August 1, 2023, Plaintiff Adra purchased a Pillow Cube Side Sleeper Pro from Amazon.com for an actual price of $89.99 with a higher false reference price. The false reference price was not the prevailing market price of the Product within three months immediately preceding the publication of the reference price on the Amazon website.

16.    Plaintiff Wayne Mitchell is an individual consumer who, at all times relevant to this action, was a citizen of and resided in Sacramento County, California. Before purchasing Defendant's Product, Plaintiff saw Defendant's representations on the site relating to the purported sale price for the Product. Had Plaintiff known the truth—that the Product was not marked down from the price it supposedly was, Plaintiff would not have purchased the Product. On January 29, 2023, Plaintiff

Mitchell purchased the Side Sleeper Ice Cube Pillow from pillowcube.com for an actual price of $134.99, with a false reference price of $179.99. The false reference price of $179.99 was not the prevailing market price of the Product within three months immediately preceding the publication of the reference price on the Pillow Cube website.

17.    Defendant Pillow Cube, Inc. is a Delaware corporation with its principal place of business in Orem, Utah. Defendant Pillow Cube, Inc. manufactures, markets, advertises, and distributes the Products throughout the United States, including in California. Defendant Pillow Cube, Inc. manufactured, marketed, and sold the Product during the proposed class period.

18.    Defendant Jay Davis is an individual who resides in Utah County, Utah. Defendant Davis is the founder and CEO of Defendant Pillow Cube, Inc. Defendant Davis personally oversaw and directed the false pricing scheme alleged herein.

19.    At all times mentioned in this Complaint, Defendant Davis was an agent of Defendant Pillow Cube, Inc. and in doing the acts alleged herein, was acting within the course and scope of such agency. Defendant Pillow Cube, Inc. had actual and/or constructive knowledge of the acts of Defendant Davis and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts, and/or retained the benefits of said wrongful acts.

20.    At all times mentioned in this complaint, each Defendant knew that each and every other Defendant was engaged in the unlawful acts subject to this complaint. Each Defendant gave substantial assistance or encouragement to the other Defendant who committed the predicate unlawful acts by supplying that Defendant with the means or instrumentalities to commit the unlawful acts, which were substantial factors in causing harm to Plaintiffs and the Classes.

21.    Defendant Davis is liable for the conduct of Pillow Cube, Inc. because Defendant Davis abused the organizational form as corporation to accomplish

fraudulent objects, namely, to fraudulently promote the sale of Pillow Cube Products, to conceal the proceeds of those frauds, and to frustrate the ability of victims to obtain redress for the fraud. Defendant Davis totally dominates and controls Pillow Cube, Inc. to such an extent that the independence of Pillow Cube, Inc. is a sham. Defendant Davis founded Pillow Cube, Inc., has majority ownership of Pillow Cube, Inc., and completely dominates the management and control of Defendant Pillow Cube, Inc. as its CEO. Defendant Davis has operated Pillow Cube, Inc. in a manner that there is such a unity of interest and ownership between Defendant Davis and Pillow Cube, Inc. that any sense of independence is non-existent. In fact, Defendant Davis exercises total operational control and decision-making power over all business activities at Pillow Cube, including but not limited to pricing for the Pillow Cube Products. Defendant Davis actively manages and oversees all business operations of Pillow Cube, Inc. and retains final decision-making power.

22. Defendant Davis actually participated in the conduct alleged in this complaint and Defendant Davis is personally liable for all unlawful acts described herein because he authorized, directed, or participated in such acts notwithstanding the fact that he acted as an agent of the corporation.

## **FACTUAL ALLEGATIONS**

### **A. Defendants' False Reference Pricing**

23. Defendants engage in a false and misleading reference price scheme in the marketing and selling of Pillow Cube Products. Defendants advertise pillows and other related items for sale by listing them with a fictitious original price and a corresponding sale price. The original price communicates "the product's worth and the prestige that ownership of the product conveys." *Hinojos*, 718 F.3d at 1106 (citing Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (Spring 1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects'

perceived value and willingness to buy the product."). "Misinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

24.     Defendants advertise a seemingly original price (the false reference price) with a "strikethrough," which tells customers that Defendants' previously offered the Products at the strikethrough price. However, the Products are never sold at the strikethrough price because the Products are perpetually on sale.

25.     For example, on January 29, 2023, Defendants' Products, including the Side Sleeper Ice Cube Pillow, were listed as being on sale. Defendants represented that the Side Sleeper Ice Cube Pillow had an original price of $179.99 and a sale price of $134.99 as shown below:[3]



---

[3] https://web.archive.org/web/20230129130412/https://www.pillowcube.com/collections/pillow-cube-collection attached hereto as **Exhibit 1**.

26.    On February 7, 2023, Defendants' Products, including the Side Sleeper Ice Cube Pillow, were listed as being on sale as shown below[4]:



27.    On March 21, 2023, Defendants' Products, including the Side Sleeper Ice Cube Pillow, were still listed as being on sale as shown below:[5]



28.    On April 1, 2023, the Side Sleeper Ice Cube Pillow was still listed as having an original price of $179.99 and a sale price of $134.99 as shown below:[6]

**Side Sleeper Ice Cube Pillow**

~~$179.99~~ **$134.99**

★★★★★ 1033 reviews

**Spring Sale Deal**

Looking for a way to **keep your head cool while sleeping**? Look no further than the Side Sleeper Ice Cube Pillow! This unique cube-shaped pillow is specifically designed for side sleepers, and features frozen fibers that will help keep your head cool all night long. So say goodbye to flipping your pillow in search of the cool side – with the Side Sleeper Ice Cube Pillow, you can **sleep 10 degrees colder** without ever having to worry about it!

---

[4] https://web.archive.org/web/20230227081507/https://www.pillowcube.com/ attached hereto as **Exhibit 2**.

[5] https://web.archive.org/web/20230321042652/https://www.pillowcube.com/ attached hereto as **Exhibit 3**.

[6] https://web.archive.org/web/20230401172036/https://www.pillowcube.com/products/side-sleeper-ice-cube-pillow attached hereto as **Exhibit 4**.

1    29.   On May 10, 2023, the Side Sleeper Ice Cube Pillow was still listed as

2  having an original price of $179.99 and a sale price of $134.99 as shown below:[7]



13    30.   On June 7, 2023, all of Defendants' pillows, including the Side Sleeper

14  Ice Cube Pillow, were still listed on sale as shown below:[8]



[7] https://web.archive.org/web/20230510145637/https://www.pillowcube.com/products/side-
sleeper-ice-cube-pillow attached hereto as **Exhibit 5**.

[8] https://web.archive.org/web/20230607130651/https://www.pillowcube.com/collections/pillow-
cube-collection attached hereto as **Exhibit 6**.

9

31.  On July 11, 2023, all of Defendants' pillows were still listed as being on sale as shown below:[9]



32.  In sum, the advertised discounts were fictitious because the reference prices did not represent a bona fide price at which Defendants previously sold or offered to sell the products, on a regular basis, for a commercially reasonable period of time, as required by the Federal Trade Commission ("FTC"). In addition, the represented advertised reference prices were not the prevailing market retail price within the three months (90 days) immediately preceding the publication of the advertised former reference price, as required by California law.

33.  As another example, on December 10, 2022, Defendants advertised that the reference price of the Side Sleeper Product that Plaintiff Mitchell purchased was $159.99. However, the Product was listed as being on sale for $109.99 as shown below.[10]

---

[9] https://web.archive.org/web/20230711115641/https://www.pillowcube.com/ attached hereto as **Exhibit 7**

[10] https://web.archive.org/web/20221210020248/https://www.pillowcube.com/products/side-sleeper-ice-cube-pillow attached hereto as **Exhibit 8**.

34.    The items Plaintiffs purchased were listed as having an original price of roughly $45 more than the sale price displayed on the website. Defendants advertised the items as having a sale price at a discount. However, the Products never actually sold at the fake reference price within three months prior to Plaintiffs' purchase of the Products.

35.    After observing that the original price of the Products, based on that number being displayed with a strikethrough, and the accompanying sale price itself, Plaintiffs believed they was receiving a significant discount on the Products they had chosen. Because they was interested in the Products and felt that the discounted price would likely not last, and that they were getting a significant bargain on the Products, Plaintiffs proceeded to finish checking out and purchased the Products.

36.    Plaintiffs reasonably relied upon Defendants' artificially inflated reference prices and false discounts when purchasing the Products. Plaintiffs would not have made such a purchase but for Defendants' misrepresentations regarding the substantial discount being offered for the Products. Plaintiffs would like to continue buying the Products in the future but cannot be certain of the veracity of Defendants' advertised bargains.

## NO ADEQUATE REMEDY AT LAW

37.    Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

38.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendants' overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements,

over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). This is especially important here because Plaintiffs allege Defendants have committed "unlawful" acts and bring a claim for violation of the UCL's "unlawful prong." Specifically, Defendants have violated Cal. Bus. & Prof. Code § 17501 among other laws. Plaintiffs and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

39.    A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiffs and members of the class because Defendants continue to misrepresent the price of the Products. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm— none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

40.    It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or

completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

41.    Plaintiffs bring this action as a class action, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of the following classes (both class are hereinafter referred to as the "class"):

**Nationwide Class**

All persons who purchased Products at a discount from an advertised referenced price for personal use in the United States within the applicable statute of limitations until the date class notice is disseminated.

**California Class**

All persons who purchased Products at a discount from an advertised referenced price for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

42.    Excluded from the class are: (i) Defendants and their officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

43.    Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate subclasses,

in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

44. The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

46. <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.    Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.    Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

    c.    Whether Defendants made misrepresentations concerning the Products that were likely to deceive the public;

    d.    Whether Plaintiffs and the Class are entitled to injunctive relief;

    e.    Whether Plaintiffs and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

47. <u>Typicality</u>: Plaintiffs are members of the Class that Plaintiffs seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct

1   and purchased the Products. Plaintiffs re entitled to relief under the same causes of

2   action as the other Class Members.

3      48.   Adequacy: Plaintiffs are adequate Class representatives because

4   Plaintiffs' interests do not conflict with the interests of the Class Members Plaintiffs

5   seek to represent; the consumer fraud claims are common to all other members of the

6   Class, and Plaintiffs have a strong interest in vindicating the rights of the class;

7   Plaintiffs have retained counsel competent and experienced in complex class action

8   litigation and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no

9   interests which conflict with those of the Class. The Class Members' interests will be

10  fairly and adequately protected by Plaintiffs and proposed Class Counsel. Defendants

11  have acted in a manner generally applicable to the Class, making relief appropriate

12  with respect to Plaintiffs and the Class Members. The prosecution of separate actions

13  by individual Class Members would create a risk of inconsistent and varying

14  adjudications.

15     49.   The Class is properly brought and should be maintained as a class action

16  because a class action is superior to traditional litigation of this controversy. A class

17  action is superior to the other available methods for the fair and efficient adjudication

18  of this controversy because:

19      a.   The joinder of hundreds of individual Class Members is impracticable,

20          cumbersome, unduly burdensome, and a waste of judicial and/or litigation

21          resources;

22      b.   The individual claims of the Class Members may be relatively modest

23          compared with the expense of litigating the claim, thereby making it

24          impracticable, unduly burdensome, and expensive to justify individual

25          actions;

26      c.   When Defendants' liability has been adjudicated, all Class Members'

27          claims can be determined by the Court and administered efficiently in a

28

manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

50.   Notice: Plaintiffs and counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

51.   Additionally, or in the alternative, the Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

52.   Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendants from engaging in the acts described, and to require Defendants to provide full restitution to Plaintiffs and the Class members.

53.   Unless the Class is certified, Defendants will retain money that was taken from Plaintiffs and Class members because of Defendants' wrongful conduct. Unless

a classwide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## First Cause of Action

### Violation of Unfair Competition Law

### Business & Professional Code §§ 17200, *et seq.*

54.   Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

55.   Plaintiffs bring this claim individually and on behalf of members of the Class against Defendants.

56.   Defendants are subject to the UCL, Bus. & Prof. Code § 17200 *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for violations.

57.   "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

58.   Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

59.   Defendants have violated the UCL's "unlawful prong" as a result of their violations of the CLRA and numerous state and federal laws governing pricing.

60.   Defendants' acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law in connection with their

deceptive pricing scheme. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the FTC, false former pricing schemes, like Defendants', are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – **for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one**; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

61.    In addition to federal law, California law also expressly prohibits false former pricing schemes. The FAL, Cal. Bus. & Prof. Code § 17501, entitled "Worth or value; statements as to former price," states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501.

62.    As detailed in Plaintiffs' Second Cause of Action below, the CLRA, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

63.    As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

64.    Throughout the Class Period, Defendants committed acts of unfair competition, as defined by § 17200, by using unlawful and misleading statements to promote the sale of the Product, as described above.

65.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' conduct is unfair in that the harm to Plaintiffs and members of the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

66.    Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom "sale" prices. Defendants' acts and practices offended an established public policy of transparency in pricing, and constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to

1  consumers.

2  67.  The harm to Plaintiffs and Class members outweighs the utility of

3  Defendants' practices because Defendants' practice of advertising false discounts

4  provides no utility and only harms consumers. There were reasonably available

5  alternatives to further Defendants' legitimate business interests other than the

6  misleading and deceptive conduct described herein.

7  68.  As a direct and proximate result of these acts, consumers have been and

8  are being harmed. Plaintiffs and members of the Class have suffered injury and actual

9  out of pocket losses as a result of Defendants' unfair and unlawful business acts and

10 practices because: (a) Plaintiffs and members of the Class would not have purchased

11 the Products on the same terms if they had known the true facts regarding the price of

12 the product; and (b) Plaintiffs and members of the Class paid a price premium due to

13 the misrepresentations of Defendants' Product.

14 69.  Pursuant to California Business & Professions Code § 17203, Plaintiffs

15 and members of the Class are therefore entitled to: (a) an Order requiring Defendants

16 to cease the acts of unfair competition alleged herein; (b) restitution of money paid to

17 Defendants as a result of its deceptive practices; (c) interest at the highest rate

18 allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant

19 to the private attorney general doctrine codified in Code of Civil Procedure § 1021.5,

20 or any other statutory basis.

## **Second Cause of Action**

### **Violation of Consumers Legal Remedies Act ("CLRA")**

### **Civil Code §§ 1750, *et seq.***

24 70.  Plaintiffs re-allege and incorporate by reference all allegations set forth

25 in the preceding paragraphs as if fully set forth verbatim herein.

26 71.  Plaintiffs bring this claim individually and on behalf of the Class against

27 Defendants.

28

72.    At all times relevant hereto, Plaintiffs and members of the Class were "consumer[s]," as defined in Civil Code section 1761(d).

73.    At all relevant times, Defendants were a "person," as defined in Civil Code section 1761(c).

74.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendants constituted "goods," as defined in Civil Code section 1761(a).

75.    The purchases of the Products by Plaintiffs and members of the Class were and are "transactions" within the meaning of Civil Code section 1761(e).

76.    Defendants disseminated, or caused to be disseminated, through their advertising, marketing, and listing for sale—that the Products were sold at a discount from a normally advertised price. Defendants' representations violate the CLRA by:

(a)    advertising goods or services with intent not to sell them as advertised; § 1770(a)(9); and

(b)    making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; § 1770(a)(13).

77.    Defendants violated the CLRA because the Products were misleadingly priced. Defendants knew or should have known that the Products were not truly on sale and were misleadingly priced.

78.    Defendants' actions as described herein were done with conscious disregard of Plaintiffs' rights and was wanton and malicious.

79.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants are still representing that their Product has characteristics which they do not have.

80.    Pursuant to Civil Code section 1782(d), Plaintiffs and members of the Class seek an order enjoining Defendants from engaging in the methods, acts, and practices alleged herein, and for restitution and disgorgement.

81. Pursuant to Civil Code section 1782, Plaintiff Mitchell notified Defendants in writing by certified mail of the alleged violations of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. More than 30 days have now passed since Defendants' receipt of Plaintiff's letter and Defendants have failed to take any corrective action. Accordingly, Plaintiffs seek damages, injunctive relief, punitive damages, and attorneys' fees and costs for Defendants' violations of the CLRA.

## **REQUEST FOR RELIEF**

Plaintiffs, individually, and on behalf of all others similarly situated, request for relief as follows:

82. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class Representatives and appointing the undersigned counsel as Class Counsel;

83. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of Defendants' unlawful, unfair, and fraudulent business practices;

84. Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

85. Ordering actual damages;

86. Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

87. Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

88. Ordering such other and further relief as may be just and proper.

1

### **JURY DEMAND**

2

Plaintiffs demand a trial by jury of all triable claims in this complaint.

3

4   Dated: December 12, 2024                    CROSNER LEGAL, P.C.

5

6                                               By:_____/s Michael T. Houchin_____
                                                    MICHAEL T. HOUCHIN

7
                                                Michael T. Houchin
8                                               Craig W. Straub
                                                Zachary M. Crosner
9                                               9440 Santa Monica Blvd. Suite 301
                                                Beverly Hills, CA 90210
10                                              Tel: (866) 276-7637
                                                Fax: (310) 510-6429
11                                              craig@crosnerlegal.com
                                                zach@crosnerlegal.com
12
                                                *Attorneys for Plaintiffs and the*
13                                              *Proposed Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**California Civil Code § 1780(d) Affidavit**

I am an attorney duly licensed to practice before all of the courts of the State of California. I am an attorney at the law firm of Crosner Legal, P.C., one of the counsel of record for plaintiffs in the above-entitled action. Defendants have done, and are doing, business in California, including in San Diego County. Such business includes the marketing, promotion, distribution, and sale of its products at issue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed December 12, 2024, at San Diego, California.

By:          */s/ Michael T. Houchin*
            MICHAEL T. HOUCHIN

CLASS ACTION COMPLAINT